UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| RUDY WILKINS,<br><br>    Plaintiff,<br><br>    v.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et al.,<br><br>    Defendants. | Case No. 15-cv-01706-LB<br><br>**ORDER OF SERVICE AND PARTIAL DISMISSAL**<br><br>[Re: ECF No. 15 ] |

## INTRODUCTION

Rudy Wilkins, currently an inmate at San Quentin State Prison, filed this *pro se* prisoner's civil rights action under 42 U.S.C. § 1983 to complain about conditions at the Santa Rita Jail in Alameda County, where he formerly was housed. He consented to proceed before a magistrate judge. (ECF No. 1 at 4.)[1] This action is now before the court for review of the second amended complaint. This order finds the second amended complaint states cognizable claims against the doctor-defendants, orders service of process on the doctor-defendants, and dismisses other parties as improperly joined.

---

[1] Citations are to the Electronic Case File ("ECF"); pin cites are to the ECF-generated page numbers at the tops of the documents.

**STATEMENT**

In his second amended complaint, Mr. Wilkins alleges the following about events that occurred while he was an inmate at Santa Rita Jail, during which time he was "a convicted inmate." (ECF No. 15 at 5.)

Medical care providers did not adequately respond to Mr. Wilkins's medical needs in November 2013 and later. Dr. Maria Magat, Dr. F. Chen, Dr. G. Newell, and Dr. Tha Kin denied Mr. Wilkins (1) closed-toe shoes for four months, (2) cold weather clothing for more than twelve months, (3) treatment for an irritating skin condition for thirteen months, and (4) adequate primary care (including refilling pain medications) for twenty-three months. (*See* ECF No. 15 at 10-11; ECF No. 15-1 at 1-3, 10-11; ECF No. 15-2 at 1-4.) The denials of the needed closed-toe shoes and cold weather clothes occurred even though Mr. Wilkins told the doctors of painful swelling in his joints and bones that resulted from the cold and rainy weather he experienced when going to court. The denials of the adequate skin care occurred even though he "suffered from skin irritation," "marks, spots" and scars which caused him emotional distress and caused him to suffer from obsessive-compulsive disorder. (ECF No. 15-1 at 2-3.) Dr. Magat also failed to properly train the other doctors to "ensure that they do not use inhumane treatment and delay or den[y] needed medical treatments." (ECF No. 15-2 at 5.)

Mr. Wilkins's skin problems started when the jail switched from bar soap to liquid soap during his incarceration. Sergeant Dixon oversaw the jail commissary. On February 28, 2014, Mr. Wilkins received a bottle of shampoo/body wash instead of the bar soap he had ordered from the commissary. (ECF No. 15 at 8.) After a few uses, he developed a skin irritation. A nurse told him to drink more water and to try some antifungal cream or hydrocortisone cream. (ECF No. 15 at 8.) Mr. Wilkins received little relief from following those directions.

Mr. Wilkins filed an inmate appeal in which he stated that Sergeant Dixon's replacement of bar soap with liquid soap caused his skin irritation. (*Id.*). Deputy Ujour was disrespectful and irritated when Mr. Wilkins refused to sign an "extension form" pertaining to his inmate grievance and did not handle grievances appropriately in late March-early April 2014. (ECF No. 15 at 9-10.) Sergeant Macintire, sergeant Dixon and deputy Ujour "knowingly conspired together to prevent

1  plaintiff from exhaustion of administrative remedies." (*Id.* at 10.)

2  In the course of processing Mr. Wilkins's inmate appeal, Sergeant Macintire contacted staff
3  from Corizon Health (i.e., the company that provides medical services at the jail) for information
4  from Mr. Wilkins's medical records in or about October 2014, and Corizon Health released
5  information "as to what allergies Plaintiff was listed to have in past and present medical history."
6  (ECF No. 15-1 at 5.) Mr. Wilkins has not consented to release of his medical records to anyone in
7  the Sheriff's department. This disclosure violated his right to protection of his medical records
8  under HIPAA, the Health Insurance Portability and Accountability Act. (*Id.*) Dr. Magat also
9  released his medical records without his consent to persons handling his inmate grievances,
10 thereby violating Mr. Wilkins's rights to privacy. (ECF No. 15-1 at 9-10).

11 Sheriff Gregory Ahearn and Undersheriff Richard Lucia failed to properly train the custodial
12 staff at the jail. (ECF No., 15-1 at 4-5; ECF No. 15-2 at 5.) Sheriff Ahearn also failed to properly
13 investigate and take proper actions to discipline those persons as to whom Mr. Wilkins had lodged
14 complaints. (ECF No. 15-2 at 4.)

15 In November 2013, Mr. Wilkins was put in "maximum housing" in an isolation cell for two
16 days with no mattress or cold weather clothing because there was no lower tier bunk available.
17 (ECF No.15 at 7.)

18 Mr. Wilkins was required to change from civilian clothing into jail-issued clothing in a
19 dressing room that had no partition to prevent him from being seen naked by the dozens of other
20 inmates in the same room. (ECF No. 15-1 at 6.) Sergeant Macintire and other deputies denied Mr.
21 Wilkins's request to change his clothes in modified dressing rooms nearby.

22 Mr. Wilkins was kept in a crowded holding cell for 1.5 hours while waiting to be transported
23 to court one day. During this time, he had to use the toilet for which there was not a privacy barrier
24 in place. (ECF No. 15-1 at 6.)

25 Mr. Wilkins was served bag lunches that sometimes contained spoiled items. The lunches had
26 "no freshness date or exp[i]ration date, and no nutritional facts stamped" on the cellophane
27 wrappers that sealed the bag lunches. (*Id.*) Several times the luncheon meat was bad; several times
28 the oranges and apples were unacceptable; several times the "bread molded"; and the "cookies

3

1  often sweated wet from greases [due to] contact with luncheon meat." (*Id.*) Food trays were

2  prepared by low security inmates in the jail's kitchen, and sometimes those trays appeared to have

3  been tampered with or incomplete. (*Id.* at 7-8.) When Mr. Wilkins complained, the staff responded

4  by marking his special diet tray with a black marker on the cellophane wrapper that covered the

5  meals, but that ink might pose a health risk. (*Id.* at 8.)

## ANALYSIS

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id*. at § 1915A(b). *Pro se* complaints must be liberally construed. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Deliberate indifference to an inmate's serious medical needs amounts to the cruel and unusual punishment prohibited by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison or jail official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the objective prong of the deliberate indifference test in a medical care claim, the plaintiff "must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citation and internal quotation marks omitted). For the subjective, or "deliberate indifference" prong, the official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he

4

must also draw the inference." *Farmer*, 511 U.S. at 837. The plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citation and internal quotation marks omitted).

Liberally construed, the second amended complaint states cognizable § 1983 claims against Dr. Maria Magat, Dr. F. Chen, Dr. G. Newell and Dr. Tha Kin for Eighth Amendment violations based on their alleged deliberate indifference to Mr. Wilkins's need for treatment of his skin condition, need for adequate primary care, and need for chronos for closed-toe shoes and cold-weather clothes.[2]

The second amended complaint does not state a claim against Dr. Magat for disclosure of Mr. Wilkins's medical information. The Health Insurance Protability and Accountability Act of `1996 ("HIPAA"), Pub. L. 104-191, 110 Stat. 1936 (codified as amended in scattered sections of 42 U.S.C.) "provides for no private right of action." *Webb v. Smart Document Solutions*, 499 F.3d 1078, 1080 (9th Cir. 2007); *see, e.g., Seaton v. Mayberg*, 610 F.3d 530, 533 (9th Cir. 2010) (citing *Webb* and dismissing prisoner's claim under HIPAA for disclosure of his medical records). Mr. Wilkins' assertion that Dr. Magat's release of his medical information violated his constitutionally-protected privacy rights also fails to state a claim because "prisoners do not have a constitutionally protected expectation of privacy in prison treatment records when the state has a legitimate penological interest in access to them." *Seaton*, 610 F.3d at 533. The allegations of the second amended complaint plainly show that there was a legitimate penological need for the disclosure of the records: to resolve his inmate grievances. Mr. Wilkins's claims against Dr. Magat for disclosure of his medical information to the inmate appeals division are dismissed without leave to amend.

The second amended complaint does not state a § 1983 claim against Sergeant Dixon for an

---

[2] Although shoes and cold-weather clothes usually are not thought of as medical needs, the allegations of the second amended complaint indicate that a doctor or other health care provider had to write a chrono (i.e., jailspeak for a memorandum) authorizing the inmate to be provided with and/or possess these items.  The Eighth Amendment's objective prong may be satisfied by jail officials' long-term denial of adequate clothing and shoes as well as denial of medical care. *See Farmer*, 511 U.S. at 832 (Eighth Amendment imposes duties on prison and jail officials to "provide humane conditions of confinement," including "adequate food, clothing, shelter, and medical care").

5

Eighth Amendment violation for providing the liquid soap that caused the skin irritation for which Mr. Wilkins sought medical care. Mr. Wilkins was not the only inmate given the liquid soap; the jail switched the type of soap provided to the inmate population. Mr. Wilkins has not alleged facts plausibly suggesting that Sergeant Dixon knew the soap would cause the irritation that Mr. Wilkins experienced. The second amended complaint fails to allege that Sergeant Dixon knew of a serious risk to Mr. Wilkins's health and ignored that risk when he determined that the jail would switch to liquid soap.  This claim is dismissed.  Further leave to amend will not be granted because it would be futile.  The court has explained the elements of a deliberate-indifference claim and Mr. Wilkins has been unwilling or unable to allege facts showing those elements with regard to the provision of the liquid soap.

Mr. Wilkins's other claims will be dismissed as improperly joined with his medical care claims against the four doctors. Under Federal Rule of Civil Procedure 20(a), all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." "A buckshot complaint that would be rejected if filed by a free person – say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions – should be rejected if filed by a prisoner." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (prisoner complaint seeking to join 24 defendants and approximately 50 distinct claims made no effort to show that the 24 defendants had participated in the same transaction or series of transactions or that a question of fact was common to all defendants). "Unrelated claims against different defendants belong in different suits," not only to prevent the sort of "morass" that a multi-claim, multi-defendant suit can produce, "but also to ensure that prisoners pay the required filing fees – for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of required fees." *Id.* (citing 28 U.S.C. § 1915(g)). "Instead of developing one generalized test for ascertaining whether a particular factual situation constitutes a single transaction or occurrence for purposes of Rule 20, the courts seem to have adopted a case-by-case

1  approach. As stated by one district court judge: 'there can be no hard and fast rule, and that the
2  approach must be a general one of whether there are enough ultimate factual concurrences that it
3  would be fair to the parties to require them to defend jointly [the several claims] against them.'"
4  7 Wright, Miller & Kane, Federal Practice and Procedure § 1653 (3d ed. 2001) (citation omitted).

    Here, the second amended complaint has a serious joinder problem. The four doctors are sued for the allegedly deficient health care provided to Mr. Wilkins and they are not named for any of the other claims asserted by Mr. Wilkins. The surviving claims against the other defendants are not "with respect to or arising out of the same . . . series of transactions or occurrences," as required for permissive joinder. See Fed. R. Civ. P. 20(b). The health care claims against the four doctors arise out of a different series of occurrences from the claims against the other defendants pertaining to the handling of the grievances, the short stay in maximum housing, the failure to provide a private dressing area, the failure to provide a private toilet, and the food service problems mentioned in the second amended complaint. There also are not questions of law or fact common to the doctor-defendants and all the other defendants. The non-doctor defendants (and claims against them) are not properly joined with the doctor-defendants.

    Dismissal of the entire action is not necessary, however, as the improper joinder problem can be solved by merely dismissing or severing the improperly joined parties. See Fed. R. Civ. P. 21. The court must conduct a prejudice analysis, including potential statute of limitations problems, before selecting dismissal over severance. *See Rush v. Sport Chalet, Inc.,* 779 F.3d 973, 975 (9th Cir. 2015). The statute of limitations for a § 1983 claim filed in California is two years. *See Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); Cal. Civ. Proc. Code § 335.1. Incarceration of the plaintiff is a disability that may toll the statute for a maximum of two years for a plaintiff who is in prison "for a term less than for life." See Cal. Civ. Proc. Code §§ 352.1, 357. A continuously incarcerated plaintiff thus has four years to bring his action. None of Mr. Wilkins' claims would be time-barred by dismissal of the improperly joined defendants because those claims appear to be based on events occurring on and after February 2014. Mr. Wilkins appears to be many months away from the expiration of the statute of limitations deadline for him to file a new § 1983 action. Additionally, pursuing his claims in separate actions is more likely to help than

7

hurt Mr. Wilkins because he will have extreme difficulty responding to a dispositive motion from the defendants if he pursues all of his various claims in a single action. This action has not progressed beyond the pleading stage, so there is no effort that will have been wasted in this case. For these reasons, the court finds that there would be no prejudice to Mr. Wilkins due to the dismissal of the improperly joined defendants and therefore selects dismissal over severance. Accordingly, the court will dismiss all the defendants except for the four-doctor defendants. The dismissal of the improperly joined defendants is without prejudice to Mr. Wilkins filing new actions asserting claims against the dismissed parties. (This is not to say that the claims against the dismissed parties are meritorious, but simply that those claims must be pursued in a separate action, if at all.)

## CONCLUSION

1. Liberally construed, the second amended complaint states cognizable § 1983 claims against Dr. Maria Magat, Dr. F. Chen, Dr. G. Newell, and Dr. Tha Kin for violating Mr. Wilkins' Eighth Amendment rights. The second amended complaint does not state a claim against sergeant Dixon for an Eighth Amendment violation based on providing the soap that irritated Mr. Wilkins' skin and does not state a claim against Dr. Magat for disclosing his medical information to the inmate appeals unit. All other defendants and claims are dismissed as improperly joined; their dismissal is without prejudice to Mr. Wilkins filing one or more new actions asserting those claims against those defendants.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the second amended complaint and attachments, a copy of all the documents in the case file, and a copy of the "consent or declination to magistrate judge jurisdiction" form upon the following four defendants, all of whom apparently are on the medical staff of Corizon Health at the Santa Rita Jail:

- Dr. Maria Magat
- Dr. F. Chen
- Dr. G. Newell
- Dr. Tha Kin

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

    a. No later than **May 6, 2016**, the defendants must file and serve a motion for summary judgment or other dispositive motion. If the defendants are of the opinion that this case cannot be resolved by summary judgment, the defendants must so inform the court prior to the date the motion is due. If the defendants file a motion for summary judgment, the defendants must provide to the plaintiff a new *Rand* notice regarding summary judgment procedures at the time they file such a motion. *See Woods v. Carey*, 684 F.3d 934, 939 (9th Cir. 2012). If the motion is based on nonexhaustion of administrative remedies, the defendants must comply with the notice and procedural requirements in *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014).

    b. The plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon the defendants no later than **June 3, 2016**. The plaintiff must bear in mind the notice and warning regarding summary judgment provided later in this order as he prepares his opposition to any motion for summary judgment.

    c. If the defendants wish to file a reply brief, the reply brief must be filed and served no later than **June 17, 2016**.

4. The plaintiff is provided the following notices and warnings about the procedures for motions for summary judgment:

> The defendants [may make] a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is

granted, your case will be dismissed and there will be no trial. *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998). If a defendant files a motion for summary judgment for failure to exhaust administrative remedies, he or she is seeking to have the case dismissed. A plaintiff faced with such a motion can oppose it using the same methods as described above for other summary judgment motions. As with other defense summary judgment motions, if a motion for summary judgment for failure to exhaust administrative remedies is granted, the case will be dismissed and there will be no trial.

5. All communications by the plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to the defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, the plaintiff may serve a document by mailing a true copy of the document directly to the defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

6. Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2)(B) or Local Rule 16 is required before the parties may conduct discovery.

7. The plaintiff is responsible for prosecuting this case. The plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). The plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility or is released from custody.

8. The plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to the court for consideration in this case.

9. The plaintiff's request for a photocopy of his second amended complaint in this action and his amended complaint in Case No. 15-cv-1859 LB is GRANTED. (ECF No. # 16.) The clerk will mail him a copy of ECF No. 15 and all attachments thereto in this action, and a copy of ECF No. 20 and all attachments thereto in Case No. 15-cv-1859 LB. The plaintiff's request for a copy of his *in forma pauperis* application in each case is DENIED because it does not appear to be necessary

for the prosecution of either of these cases. In the future, the plaintiff must pay for all photocopies he requests from the court. If his prison does not have adequate photocopying services, he should handwrite a second copy of any document he files so that he may have a copy of it for his record.

**IT IS SO ORDERED.**

Dated: February 3, 2016

LAUREL BEELER
United States Magistrate Judge

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDY WILKINS,<br><br>    Plaintiff,<br><br>v.<br><br>ALAMEDA COUNTY SHERIFF'S OFFICE, et al.,<br><br>    Defendants. | Case No.  3:15-cv-01706-LB<br><br>**CERTIFICATE OF SERVICE** |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 3, 2016, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Rudy  Wilkins ID: AQM-932
San Quentin State Prison H Unit - Dorm #2-Bed #13
San Quentin, CA 94974

Dated: February 3, 2016

                                            Susan Y. Soong
                                            Clerk, United States District Court

                                            By:_____
                                            Lashanda Scott, Deputy Clerk to the
                                            Honorable LAUREL BEELER